UNITED STATES DISTRICT COURT

DISTRICT OF IDAHO

| | |
|---|---|
| HAILEY K. B.,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No. 1:25-cv-00300-REP<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending is Plaintiff Hailey K. B.'s Complaint (Dkt. 1), appealing the Social Security Administration's denial of her disability claim. This action is brought pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). The alleged date of onset was October 1, 2018. AR 15. Having carefully considered the record and otherwise being fully advised, the undersigned enters the following memorandum decision and order.

## I. LEGAL STANDARD

Under 42 U.S.C. § 405(g), the Court may set aside the Commissioner's denial of Social Security benefits if the Administrative Law Judge's ("ALJ") findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (internal citations omitted). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal citations omitted). If the evidence would reasonably support affirming the ALJ's decision, or reversing it, the Court may not substitute its own judgment for the ALJ's. *Ferguson v. O'Malley*, 95 F.4th 1194, 1199 (9th Cir. 2024).

The Court must consider the administrative record as a whole. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). The Court also must weigh both the evidence that supports and evidence

that does not support the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Rather, only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.* The Court may determine the ALJ's reasoning by drawing reasonable inferences and determining an implied finding from the record. *Ferguson v. O'Malley*, 95 F. 4th 1194, 1200 (9th Cir. 2024).

## II. DISCUSSION

The Court first summarizes the ALJ's sequential process analysis. Plaintiff's disability application alleged she suffered from multiple sclerosis, paresthesia, Hashimoto's thyroiditis, numbness, migraines, and other impairments limiting her ability to work. AR 207. The ALJ determined that Plaintiff had the following "severe impairments": multiple sclerosis, migraines, and obesity. AR 17. However, the ALJ found that these impairments did not meet or medically equal a listing impairment. AR 19. The ALJ then found that Plaintiff had the residual functional capacity to perform sedentary work, with some limitations. AR 21. The ALJ determined that this residual functional capacity allowed Plaintiff to perform her past relevant work. AR 28. Accordingly, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act and denied her disability application. AR 30.

Plaintiff raises three arguments on appeal: (i) the ALJ erred by finding that her mental impairments were non-severe, (ii) the ALJ erred by failing to properly account for her mental impairments and limitations in her RFC, and (iii) the ALJ erred in analyzing her subjective symptom testimony. Pl.'s Br. at 1 (Dkt. 12). The Court addresses each argument below.

### A. The ALJ's Mental Impairment Analysis

Plaintiff first argues that the ALJ erred by finding that her mental impairments were non-severe. Pl.'s Br. at 1 (Dkt. 12). In particular, Plaintiff argues that the ALJ's conclusion that her

major depressive disorder and generalized anxiety disorder caused her only mild limitations in various functional areas was unsupported by substantial evidence. *Id.* at 2. Defendant responds that the ALJ's reasoning was supported by substantial evidence. Def.'s Br. at 2 (Dkt. 16). The Court agrees with Defendant.

### *1. Legal Standard*

The second step of the sequential process requires an ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" if it does not significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1522, 416.922. The burden of proving an impairment falls on the claimant. *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999).

When evaluating the severity of mental impairments, an ALJ first must look to "pertinent symptoms, signs, and laboratory findings" to determine whether the claimant has a medically determinable impairment. 20 C.F.R. §§ 404.1520a(b)(1), 416.920a. Then, the ALJ must "rate the degree of functional limitation" resulting from the impairment in four broad functional areas (known as the "paragraph B" criteria): (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). In doing so, the ALJ must consider "all relevant evidence" to obtain a "longitudinal picture" of a claimant's overall degree of functional limitation. 20 CFR § 404.1520a(c)(1). The ALJ rates the claimant's limitation in

these areas using a five-point scale: none, mild, moderate, marked, and extreme. 20 CFR § 404.1520a(c)(4).

Finally, the ALJ must determine the severity of the claimant's mental impairments. If the "paragraph B" limitations are rated as "none" or "mild," the ALJ will generally conclude that the mental impairment is "not severe." 20 C.F.R. §§ 404.1520a(d)(1). "Not severe" means "the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (quoting SSR 85-28) (superseded in part on other grounds by 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3)).

***2. Analysis***

The ALJ found that Plaintiff's severe impairments included multiple sclerosis, migraines, and obesity. AR 17. The ALJ noted that Plaintiff "has additional impairments and the record shows that she has been treated or evaluated for other symptoms and complaints that appear periodically throughout the record." *Id.* However, the ALJ found that these impairments, both singly and in combination, were non-severe. *Id.* at 17-18.

Relevant here, the ALJ found that Plaintiff's major depressive disorder and generalized anxiety disorder were medically determinable mental impairments. AR 18. However, the ALJ found that these impairments "did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and were therefore non-severe." *Id.*

The ALJ noted that, in making this finding, he had considered the four broad areas of mental functioning set out in disability regulations for evaluating mental disorders (the "paragraph B" criteria). *Id.* The ALJ made findings as to Plaintiff's limitations in each of these four areas.

First, the ALJ found that Plaintiff had a mild limitation in understanding, remembering, or applying information. *Id.* The ALJ stated that although Plaintiff reported brain fog and difficulty understanding and remembering, her treatment notes and daily activities reflected normal memory and logical thought content. *Id.* Second, the ALJ found that Plaintiff had no limitation in interacting with others, noting her daily activities and records reflected normal socializing. *Id.* Third, the ALJ found that Plaintiff had a mild limitation in concentrating, persisting, or maintaining pace. *Id.* The ALJ noted Plaintiff reported difficulty concentrating and finishing instructions but found that her treatment notes also regularly observed normal attention and concentration. *Id.* Fourth and finally, the ALJ found that Plaintiff had a mild limitation in adapting or managing herself. AR 19. Here, the ALJ pointed to Plaintiff's reports that she could handle some daily chores and self-care activities. *Id.*

The ALJ concluded that because Plaintiff's medically determinable mental impairments caused no more than a mild limitation in these functional areas. AR 19. Because the evidence "[did] not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities," her mental impairments were non-severe. *Id*.

Plaintiff asserts that "the ALJ's analysis lacks a fulsome consideration of her symptoms, mental health treatment, and the clinical findings documented in the record." Pl.'s Br. at 3-4 (Dkt. 12). In particular, Plaintiff argues that the ALJ erred by focusing selectively on reports showing normal memory and logical thought content, while ignoring other more concerning aspects of her mental health examinations. *Id.* at 3. The Court disagrees.

An ALJ is neither required to mention every piece of evidence contained in a claimant's medical record, nor required to regurgitate every facet of the records he does mention. The Ninth Circuit has "repeatedly held that an ALJ need not discuss all evidence presented to [him].

Rather, [an ALJ] must explain why significant probative evidence has been rejected." *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1193-95 (9th Cir. 2022). Plaintiff highlights portions of her records that present more abnormal findings, such as reports that she had restless motor activity, rapid and pressured speech, worried and scared mood, and anxiety. Pl.'s Br. at 3-4 (Dkt. 12). However, while Plaintiff extensively catalogues these findings and asserts they are "characteristic of her mental impairments," she provides no explanation how these deficiencies are both "specific" and "probative" of more than mild limitations in any of the four areas of mental functioning. *Kilpatrick*, 35 F.4th at 1193-95. Nor does Plaintiff seriously dispute that the record evidence that the ALJ did cite in his paragraph B analysis which reasonably suggested she was not significantly limited in the paragraph B criteria. *See generally* Pl.'s Br. at 3-6 (Dkt. 12). Further, as Defendant notes, the findings that Plaintiff says the ALJ ignored are contained in the same records that the ALJ cited in this portion of his analysis. Def.'s Br. at 3 (Dkt. 16). As a result, contrary to Plaintiff's assertion that the ALJ ignored this evidence, the ALJ instead considered these reports as evidenced by his citation to them. Thus, while the ALJ did not interpret the record as Plaintiff would have liked, he did not ignore these records and was not obligated to discuss them in detail.

Plaintiff also argues that the ALJ erred in his paragraph B analysis by listing her daily activities without explaining how they related to her mental functioning. Pl.'s Br. at 5-6 (Dkt. 12). However, the Court can easily follow the ALJ's reasoning as it relates to her daily activities. As he analyzed each of the four areas of mental functioning, the ALJ highlighted relevant evidence of Plaintiff's daily activities and then immediately followed that evidence with his conclusions as to Plaintiff's mental limitations. For example, in assessing whether Plaintiff had a limitation in understanding, remembering, or applying information, the ALJ noted that

Plaintiff could pay bills and handle a savings account. AR 18. The ALJ then immediately concluded that "[a]n assessment of greater limitation is not warranted given . . . the claimant's activities of daily living." *Id.*

While the ALJ could have provided more exhaustive analysis, he was not required to do so. An ALJ is not required to "draft dissertations when denying benefits," and his analysis need not be extensive. *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). As long as a reasonable mind can follow that analysis, it will be upheld. *Biestek*, 587 U.S. at 103. Here, the ALJ highlighted daily activities that reasonably required mental functioning relevant to each of the four paragraph B criteria. AR 18. The ALJ then immediately followed these references with a conclusion as to Plaintiff's mental functioning limitations. *Id.* Thus, in weighing Plaintiff's daily activities, the ALJ built an "accurate and logical bridge" from the evidence to his conclusions. *Lambert*, 980 F.3d at 1277.

In sum, the ALJ did not err in assessing Plaintiff's limitations in mental functioning. Remand is not warranted on this issue.

**B. The ALJ's RFC Determination**

Plaintiff next argues that the ALJ erred in formulating her RFC. Pl.'s Br. at 6 (Dkt. 12). Specifically, Plaintiff argues that the ALJ found that she had mild limitations in multiple areas of mental functioning (as discussed above) but did not incorporate any limitations addressing these impairments into her RFC. *Id.* at 7. Defendant responds that the ALJ validly found that these mild limitations warranted no mental RFC restrictions. Def.'s Br. at 2 (Dkt. 16). The Court agrees.

***1. Legal Standard***

"A claimant's RFC is what a claimant can still do despite h[er] limitations." *Moriarty v. Colvin*, Case No. CV 14-6909 RNB, 2015 WL 4397913, at *1 (C.D. Cal. July 17, 2015) (citing *Smolen v. Chater*, 80 F.3d 1273, 1291 (9th Cir. 1996)). The ALJ bears the responsibility of "translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). "In determining the RFC, the ALJ must consider all limitations, severe and non-severe, that are credible and supported by substantial evidence in the record." *Mendoza v. Kijakazi*, Case No. 1:19-cv-1371-HBK, 2022 WL 715096, at *4 (E.D. Cal. Mar. 10, 2022) (citing *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005)). An ALJ's RFC findings must be consistent with, but not identical to, the credible and properly supported limitations on the record. *Id.* (citing *Turner v. Comm'r Soc. Sec.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010)).

It is well-settled that it is the ALJ's responsibility to "translat[e] and incorporate[e] [the] clinical findings into a succinct RFC." *Rounds v. Comm'r SSA*, 807 F.3d 996, 1006 (9th Cir. 2015); *see also Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."). It is also well-settled that it is the responsibility of the ALJ to determine the credibility of the medical evidence. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). To make these determinations, an ALJ must, by necessity, analyze, assess, and draw conclusions from the available medical evidence. *See Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022) ("ALJs are, at some level, capable of independently reviewing and forming conclusions about medical evidence to discharge their statutory duty to determine whether a claimant is disabled and cannot work"); *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (an ALJ is "is

entitled to draw inferences logically flowing from the evidence" and "need not substitute the judgment of expert witnesses for his own").

However, an ALJ is not required to mention every piece of evidence contained in a claimant's medical record, nor is he required to regurgitate every facet of the records he does mention. The Ninth Circuit has "repeatedly held that an ALJ need not discuss all evidence presented to [him]. Rather, [an ALJ] must explain why significant probative evidence has been rejected." *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1193-95 (9th Cir. 2022) (quoting *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)) (internal quotation marks omitted).

Similarly, an ALJ's analysis need not reiterate every observation in a report to rely upon it. *Garrison v. Colvin*, 759 F.3d 995, 1018 (9th Cir. 2014). Rather, the ALJ need only reason via inferences "reasonably drawn from the record." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). Thus, the touchstone for a reviewing court is not the exhaustiveness of an ALJ's analysis, but its reasonableness – whether his path "may reasonably be discerned." *Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012). The Ninth Circuit, for instance, has held that an ALJ only impermissibly "cherry picks" when he selectively cites statements that belie the plain import of the medical record, while ignoring evidence that contradicts his opinion. *Garrison*, 759 F.3d at 1018.

***2. Analysis***

After making the step two findings discussed above, the ALJ noted:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following

> residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

AR 19.

The ALJ assigned Plaintiff the following residual functional capacity:

> sedentary work as defined in 20 CFR 404.1567(a) except: The claimant can never climb ladders, ropes, and scaffolds. She can occasionally climb ramps and stairs. She can frequently finger, handle, and feel, bilaterally. She can occasionally balance, as defined by the Selected Characteristics of Occupations, and occasionally crawl. She can frequently stoop, kneel, and crouch. She can tolerate occasional exposure to extreme cold and can tolerate no exposure to extreme heat or hazards, including unprotected heights and moving mechanical parts. She can tolerate no more than moderate noise and can tolerate bright light and sunlight with protective eyewear, hat, or visor.

AR 21.

Plaintiff argues that, notwithstanding the ALJ's determination of her mental impairments at step two, the ALJ erred by failing to subsequently consider the limiting effects of her mental impairments in formulating her RFC. Pl.'s Br. at 7-8 (Dkt. 12).

However, the ALJ's RFC analysis does show that the ALJ considered her mental functioning. Most notably, the ALJ concluded that Plaintiff's "generally normal mental status examinations throughout the period under review," in conjunction with her daily activities, supported his RFC conclusion. AR 28. In addition, the ALJ's RFC analysis explicitly credited medical findings that noted Plaintiff had a mild limitation in the paragraph B criteria. AR 27 (discussing the opinions of Dr. Mack Stephenson and Dr. J. Michael Dennis, which found no more than mild limitations in the paragraph B criteria). In fact, in discussing Dr. Dennis's opinion that Plaintiff had *no* paragraph B limitations, the ALJ found that "the complete record

demonstrates greater limitations in mental functioning." *Id.* Thus, the ALJ explicitly noted that Plaintiff suffered from mild limitations, even in the face of a contradictory opinion.

As this summary makes clear, the ALJ's decision reflects that he considered Plaintiff's mental limitations and impairments in formulating her RFC. Instead, Plaintiff's argument essentially amounts to an assertion that he did not include the limitations in her RFC that she would have liked. However, an ALJ's RFC need only be consistent with properly supported limitations in the record. *Turner*, 613 F.3d at 1222-23. Further, an RFC determination is ultimately concerned with "what a claimant can do." *Moriarty*, 2015 WL 4397913 at *1. Here, Plaintiff's mental impairments were mild and thus "not severe," meaning they had "no more than a minimal effect on [Plaintiff's] ability to work." *Smolen*, 80 F.3d at 1290. Because, by definition, Plaintiff's mental impairments had no more than a minimal effect on her ability to work, the ALJ did not err in omitting explicit mental limitations from Plaintiff's RFC.[1]

### C. The ALJ's Subjective Symptom Analysis

Finally, Plaintiff argues that the ALJ erred in analyzing her subjective symptom testimony. Pl.'s Br. at 9 (Dkt. 12). Specifically, Plaintiff argues that the ALJ: (i) mischaracterized her activities of daily living to portray her as more functional than she was, (ii) failed to address her mental health, and (iii) failed to consider side effects and fatigue caused by her medication. Pl.'s Br. at 10-13 (Dkt. 12). Defendant argues that the ALJ provided clear and convincing reasons to discount Plaintiff's symptom statements by noting three inconsistencies between those statements and the record, namely: (i) Plaintiff's positive response to treatment,

[1] As Defendant notes, *Woods v. Kijakazi*, 32 F.4th 785 (9th Cir. 2022), provides some support for this conclusion. There, the ALJ found that the plaintiff had mild limitations in two paragraph B criteria and subsequently included no mental limitations in an RFC that otherwise limited the plaintiff to light work. *Id.* at 794. The Ninth Circuit affirmed, noting that the "ALJ's assessment of [Plaintiff's] residual functional capacity expressly reflected these limitations." *Id.*

(ii) inconsistency between Plaintiff's alleged symptoms and her daily activities, and (iii) inconsistency between those symptoms and the objective medical evidence. Def.'s Br. at 4-6 (Dkt. 16). Defendant also argues that Plaintiff's arguments addressing her mental impairments and medication are unavailing. *Id.* at 7-8. The Court agrees with Defendant that remand is unwarranted on this issue.

***1. Legal Standard***

An ALJ must analyze a claimant's subjective symptoms in two steps. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if such objective medical evidence exists, and the ALJ has not determined that the claimant is malingering, the ALJ must provide clear and convincing reasons before rejecting the claimant's testimony regarding the severity of the claimant's symptoms. *Id.* The reasons an ALJ provides for rejecting a claimant's symptom testimony "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony . . . ." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell*, 947 F.2d at 345-46).

An ALJ is best positioned to make credibility determinations, and their determinations are entitled to great weight. *Reddick*, 157 F.3d at 722. The ALJ may engage in ordinary techniques of credibility evaluation, including consideration of (i) the claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct; as well as (ii) the claimant's daily activities, the claimant's work record, and testimony

from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). The ALJ may also consider location, duration, and frequency of symptoms; factors that precipitate and aggravate those symptoms; amount and side effects of medications; and treatment measures taken by claimant to alleviate those symptoms. *See* SSR 16-3p. Inadequate or inconsistent objective medical evidence may be used to discount a claimant's testimony. *Smartt*, 53 F.4th at 498. Similarly, daily activities that are inconsistent with a claimant's symptom allegations are also valid grounds to discount that testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014).

***2. Analysis***

In formulating Plaintiff's RFC, the ALJ first summarized the symptoms Plaintiff had reported in her testimony and accompanying written statements. AR 21-22. These symptoms included Plaintiff's reports that she suffered from fatigue, debilitating migraines, difficulty walking, weakness and numbness throughout her body, and anxiety. AR 21-22. Plaintiff also completed multiple function reports and symptom questionnaires, which also stated that she suffered from numbness, nausea, brain fog, memory issues, migraines, and fatigue. AR 22.

The ALJ then followed the two-step framework outlined above. At step one, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms. AR 23. However, at step two, the ALJ found that Plaintiff's statements about the intensity of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id.*

The ALJ explained this finding over approximately five pages. AR 23-28. He began by discussing record evidence about Plaintiff's multiple sclerosis and corresponding treatment. AR

23-25. He then proceeded to discuss record evidence of Plaintiff's migraine symptoms. AR 25. With respect to each impairment, the ALJ noted evidence indicating that Plaintiff's conditions had responded positively to medication and treatment, had not seriously relapsed or worsened, and generally did not result in any abnormal examination results. AR 24-25. After discussing relevant medical opinions, the ALJ returned to Plaintiff's symptoms. AR 27. He noted that her "statements about the intensity, persistence, and limiting effects of his or her symptoms . . . are inconsistent with the records because the evidence does not support the degree of limitations alleged." *Id.*

Further, the ALJ considered Plaintiff's daily activities. The ALJ noted that Plaintiff had reported caring for her children, helping her husband with a work project, exercising regularly, doing housework, and maintaining a busy schedule. AR 28. The ALJ found that these activities suggested that "while [Plaintiff] experiences limitations from her impairments and perhaps medication, her activity level is not as limited as alleged." AR 28.

The ALJ then specifically considered certain of Plaintiff's treatment records for back pain. He noted that, in two 2024 examinations, Plaintiff had not mentioned any of the following alleged symptoms to her provider: exercise intolerance, weakness, numbness, muscle aches, migraines, depression, or fatigue. *Id.* The ALJ also noted that Plaintiff's examinations showed that "sensation and muscle tone and strength were within normal limits." *Id.*

The ALJ concluded that "while . . . [Plaintiff] experiences limitations from her impairments, there is little evidence to support a finding that the claimant would be unable to sustain work requiring only those limited demands consistent with the residual functional capacity established in this decision." *Id.*

Plaintiff argues that the ALJ erred by cherry-picking and mischaracterizing her activities of daily living to portray her as more functional than she was. Pl.'s Br. at 11 (Dkt. 12). Plaintiff presents a different interpretation of her daily activities suggesting greater limitation than the ALJ found. *Id.* However, it is not this Court's role to credit alternative readings of the record. Instead, the Court only asks whether substantial evidence – that which a reasonable mind would accept as adequate – supports the ALJ's conclusion. *Biestek*, 587 U.S. at 103. An ALJ only improperly cherry-picks when he selectively cites in a way that belies the plain import of the record. *Garrison*, 759 F.3d at 1018. Further, in the context of a subjective symptom analysis, an ALJ's evaluation of the credibility of a claimant's reported symptoms is entitled to "great weight." *Reddick*, 157 F.3d at 722. Here, the additional evidence cited by Plaintiff does not show that the ALJ's credibility determination was improper or that he "cherry-picked." In particular, while Plaintiff's cited evidence shows that performing these activities caused her stress and difficulty, it does not change the fact that she performed these activities in the first place. Indeed, the ALJ explicitly noted that Plaintiff had reported some difficulties in performing these activities but nevertheless found that while she experienced limitations from her impairments and medication, her activity level was not as limited as alleged. Thus, the ALJ did not misconstrue the "plain import" of the record of Plaintiff's daily activities. *Garrison*, 759 F.3d at 1018. Further, Plaintiff's regular exercise, childcare, and housework reasonably contradicted her alleged symptoms, particularly of debilitating fatigue. Accordingly, remand is unwarranted on this argument.

Plaintiff next argues that the ALJ erred by failing to address her mental health symptoms. Pl.'s Br. at 12 (Dkt. 12). The Court disagrees. In reporting Plaintiff's alleged symptoms, the ALJ explicitly noted Plaintiff suffered from anxiety and that "[s]ince she stopped working, her

mental health has been worse." AR 22. The ALJ's decision then provided multiple reasons for discounting those reported symptoms. First, as discussed above, the ALJ analyzed Plaintiff's daily activities and found that they were inconsistent with the alleged extent of her impairments. In particular, Plaintiff's regular exercise, housework, and regular care for her children reasonably conflicted with her mental symptom allegations, including her anxiety that she could not complete tasks and her inability to complete tasks due to brain fog. AR 22. The ALJ also noted that Plaintiff had "generally normal mental status examinations throughout the period under review." AR 28. These normal findings were also reasonably inconsistent with Plaintiff's mental symptom allegations. Accordingly, the ALJ neither ignored Plaintiff's mental health symptoms nor failed to provide clear and convincing reasons to discount them.

Lastly, Plaintiff argues the ALJ erred by failing to consider her medication's side effects and corresponding fatigue. Pl.'s Br. at 14 (Dkt. 12). However, as discussed above, the ALJ extensively summarized Plaintiff's reported fatigue. AR 22. He also specifically noted that records from January, March, and June of 2023 showed that she suffered fatigue and brain fog from her medication, but that her medication was changed as a result. AR 25. Thus, the ALJ noted that, in addition to experiencing limitations from her impairments, Plaintiff also "perhaps" experienced limitations from her medication. AR 28. However, the ALJ then looked to Plaintiff's daily activitiesand failure to report fatigue to providers to find that Plaintiff's reported symptoms were not fully consistent with her record. *Id.* These inconsistencies reasonably contradicted the extent of Plaintiff's alleged fatigue.

Plaintiff again presents alternate statements in the record supporting greater limitations and suggests that the ALJ should have considered them. Pl.'s Br. at 13 (Dkt. 12). However, an ALJ is not required to discuss every piece of evidence in a claimant's record, *Kilpatrick*, 35 F.4th

at 1193-95, but only to provide a path which may be "reasonably discerned." *Molina*, 674 F.3d at 1121. Because the ALJ reasonably explained how these alleged symptoms were contradicted by specific record evidence, the ALJ provided clear and convincing reasons to reject those symptoms.

In sum, the ALJ did not err in evaluating Plaintiff's reported symptoms and provided clear and convincing reasons to discount those symptoms. Remand is not warranted on this issue.

## III. ORDER

Based on the foregoing, IT IS HEREBY ORDERED that the decision of the Commissioner is AFFIRMED, that Plaintiff's Complaint for Review of a Social Security (Dkt. 1) is DENIED, and this action is DISMISSED in its entirety, with prejudice.

DATED: August 14, 2026

Honorable Raymond E. Patricco
Chief U.S. Magistrate Judge